UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ERIC L. PICKENS** **LA. DOC. 398619** | **CIVIL ACTION NO. 2:10-cv-1449** |
| | **SECTION P** |
| **VERSUS** | |
| | **JUDGE TRIMBLE** |
| **WARDEN LYNN COOPER** | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

On September 20, 2010 *pro se* petitioner Eric Pickens filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Doc. 1. Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections; he is incarcerated at the Avoyelles Correctional Center, Cottonport, Louisiana.

Petitioner attacks his February 1998 manslaughter conviction in the Thirtieth Judicial District Court, Vernon Parish. Doc. 1. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE** as time-barred by the provisions of 28 U.S.C. § 2244(d).

### *Background*

The Vernon Parish Grand Jury indicted petitioner and charged him with the crime of second degree murder; the offense was alleged to have occurred on August 25, 1997. Doc. 1, att. 2, p. 4. On February 4, 1998 he pled guilty to the lesser included offense of manslaughter, and on August 21, 1998, he was sentenced to serve the maximum sentence of forty (40) years at hard

labor.  *Id*.  In imposing sentence, the trial court advised that petitioner would be eligible for parole after serving one-third of his sentence.  Doc. 1, att. 3, p. 2; *see also* Doc. 1-3, Exhibit A, pp. 22-28.

Petitioner appealed arguing a single claim of excessiveness of sentence.  On April 28, 1999, his conviction and sentence were affirmed by the Third Circuit Court of Appeals.  *State of Louisiana v. Eric P. Pickens*, 98-1443 (La. App. 3 Cir. 4/28/1999), 741 So.2d 696.  The State's argument that petitioner was not entitled to appeal his sentence was rejected by the Third Circuit and the State's subsequent writ application was denied by the Louisiana Supreme Court on November 5, 1999.  *State of Louisiana v. Eric L. Pickens*, 99-1577 (La. 11/5/1999), 751 So.2d 232.  Petitioner apparently sought writs in the Supreme Court too, and his writ application was denied on April 19, 2002.   *State of Louisiana ex rel. Eric Lamont Pickens v State of Louisiana*, 2001-2178 (La. 4/19/2002), 813 So.2d 1081.  Petitioner did not seek further direct review in the United States Supreme Court.  Doc. 1, p.4.

Meanwhile, on September 11, 2001, petitioner, who had been housed in various parish corrections centers since his arrest, was transferred to the Louisiana Department of Corrections reception center at Hunt and on September 24, 2011 he was transferred to the Avoyelles Corrections Center, his current place of incarceration.  On December 1, 2001, petitioner was provided a copy of his Master Prison Record, which was dated November 1, 2001.  *See*  Doc. 1, att. 3, p. 13.  This record indicated that petitioners FTD (Full Term Date) was September 1, 2037; that he was subject to GT (Good Time) Act 1099, and that his PED (Parole Eligibility Date) was September 1, 2031.  Doc. 1, att. 3, p, 67-68.   However, according to petitioner, "this rap sheet never expressly informed [him] just when his parole eligibility date was to be."  Doc. 1, att. 2, p.

2

13.

On some unspecified date in 2008, some seven years or so after his arrival at the Avoyelles Correctional Center, petitioner corresponded with the Department of Corrections concerning his parole eligibility date.  Doc. 1, att. 2, p. 4-5.   In a letter dated July 18, 2008, Ms. Tonia Rachal advised petitioner that his PED (Parole Eligibility Date) was September 1, 2031, the identical date set forth in the Master Prison Record tendered to petitioner seven years earlier. Doc. 1, att. 3, p. 4, 30.

On July 29, 2008 petitioner filed a *pro se* application for post-conviction relief in the Thirtieth Judicial District Court.  Petitioner argued three claims for relief, summarized as follows:

    (1)    the plea was not a knowing, intelligent, and voluntary plea because it was entered under the mistaken belief that he would be parole eligible after having served one-third of the sentence;

    (2)    ineffective assistance of counsel based on counsel's failure to advise petitioner that he would not be eligible for parole until 2031; and,

    (3)    the application, although untimely, was based upon newly discovered evidence, namely the information provided by Ms. Rachal on July 18, 2008, concerning his parole eligibility date.

Doc. 1, att. 3, p.7-20.

On April 21, 2009, an evidentiary hearing was convened in the District Court. At its conclusion, the Court determined that the application was premature.  The court also implied that the error, if any, was attributable to the Department of Corrections and that the Court had no jurisdiction over the Department with regard to computation of sentence.  The Court implied that petitioner's remedy, if any, was a suit against the Department, and the venue for the suit would be East Baton Rouge Parish.  The issues of involuntary plea, ineffective assistance of counsel and

newly discovered evidence were not addressed and there were no objections made by petitioner or his court-appointed post-conviction counsel.  Doc. 1, att. 3, p. 38-45.

Petitioner, again proceeding *pro se*, applied for supervisory writs in the Third Circuit Court of Appeals.  Among other things he argued that he was induced to plead guilty by promises that he would be parole eligible after having served one-third of whatever sentence was imposed. He did not present any argument with regard to his claims of ineffective assistance of counsel and newly discovered evidence.  Doc. 1, att. 3, p. 47-51.  On September 2, 2009 the Third Circuit denied writs noting, "Relator's application for post-conviction relief was properly denied by the trial court." Doc. 1, att. 3, p. 53.

On September 16, 2009 petitioner submitted a *pro se* writ application to the Louisiana Supreme Court.  Doc. 1, att. 3, p. 57.  He again argued that his plea was not knowing, intelligent, or voluntary because he believed that he would be eligible for parole after serving 13 years and 4 months, or one-third of the 40 year sentence.   At this point petitioner re-urged his ineffective assistance of counsel claim, and argued that "[n]ew evidence is favorable when it make a plea agreement unintelligent."  Doc. 1, att. 3, p. 60.

On August 18, 2010 the Supreme Court, citing La. Code Crim. Proc. art. 930.8 and *State ex rel. Glover v. State*, 93-2330 (La. 9/5/95), 660 So.2d 1189[1] denied writs.  *State of Louisiana ex rel. Eric L. Pickens v. State of Louisiana*, 2009-2086 (La. 8/18/2010), 42 So.3d 396.; *see also* Doc. 1, att. 3, p. 65.

---

[1] LA Code Crim. Proc. art. 930.8  provides a two-year limitations period for the filing of applications for post-conviction relief; the two-year period is reckoned from the date of finality of judgment (when petitioner entered his plea, the limitations period was three years).  In *Glover*, the Supreme Court held that an appellate court reviewing the judgment of trial court on an untimely application for post-conviction relief is not precluded from denying relief on the basis of art. 930.8 even though the lower court addressed the merits of the case.  *State ex rel. Glover v. State*,

Petitioner filed his federal *habeas corpus* petition on September 20, 2010.  Doc. 1, att. 2. He argues three claims – (1) that his plea was not a knowing, intelligent or voluntary waiver of rights; (2) that he received ineffective assistance of counsel; and, (3) new evidence was discovered which made petitioner's guilty plea unconstitutionally entered.  *Id*.  He argues that his petition is timely because "... the State of Louisiana's Department of Corrections [withheld] information from petitioner which created a state impediment and equitable tolling must apply to this case..." Doc. 1, p. 2.

Petitioner admitted that his claims "appear to be time barred...", however, petitioner maintains that he is entitled to equitable tolling because he "... was misled and prevented from asserting his rights."   Doc. 1.   Petitioner also argued that the Louisiana Supreme Court erroneously dismissed his post-conviction proceeding as time-barred and failed to consider the exception to the limitations period that occurs if the petitioner proves that the "facts upon which the claim is predicated were not known to the petitioner or his attorney." La. Code Crim. Proc. art. 930.8(A)(1).

### *Law and Analysis*

### *1.  Limitations – 28 U.S.C. §2244(d)(1)(A) – Finality of Judgment*

Title 28 U.S.C. § 244(d)(1)(A) was amended by Antiterrorism and Effective Death Penalty Act of 1996 or AEDPA to provide a one-year statute of limitations for the filing of applications for writ of *habeas corpus* by persons such as petitioner, who are in custody pursuant to the judgment of a State court.  This limitation period generally runs from "...the date on which the judgment became final by the conclusion of direct review or the expiration of the time for

---

93-2330 (La. 9/5/95), 660 So.2d 1189, 1201-02.

seeking such review..." 28 U.S.C. § 2244(d)(1)(A).[2]

The statutory tolling provision of 28 U.S.C. § 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review  was pending in state court is not counted toward the limitation period.  *Ott v. Johnson,* 192 F.3d 510, 512 (5th Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. § 2244(d)(2). Any lapse of time before the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period.  *Villegas v. Johnson,* 184 F.3d 467 (5th Cir. App. 1999) (citing *Flanagan v. Johnson*, 154 F.3d 196, 197 (5th Cir.1998)).  Further, the statute of limitations is tolled only for so long as the post-conviction proceeding remains properly filed and pending.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005).  Federal courts may raise the one-year time limitation *sua sponte*.  *Kiser v. Johnson,* 163 F.3d 326 (5th Cir. 1999).

Petitioner appealed his sentence, and then apparently sought further direct review in the Louisiana Supreme Court.  The available evidence indicates that petitioner's writ application on direct appeal was denied on April 19, 2002.  *State of Louisiana ex rel. Eric Lamont Pickens v State of Louisiana*, 2001-2178 (La. 4/19/2002), 813 So.2d 1081.  Since he did not seek further direct review in the United States Supreme Court, petitioner's judgment of conviction and sentence "became final by ... the expiration of the time for seeking [direct] review."   28 U.S.C. § 2244(d)(1)(A) (ninety days later, or on or about July 19, 2002); *see also  Roberts v. Cockrell*, 319

---

[2] Since petitioner implies that state created impediments delayed the filing of this petition and, that the factual predicate of his claims were only lately discovered, these statutory tolling provisions set forth in § 2244(d) are discussed more fully below.  *See* 28 U.S.C. § 2244(d)(1)(B) and (D).

F.3d 690, 694 (5th Cir. 2003) (Pursuant to the provisions of Supreme Court Rule 13, a state convict is allowed ninety days within which seek *certiorari* in the United States Supreme Court following the entry of judgment by the state court of last resort.  Thus, if a state prisoner has sought further direct review in the state's highest court, the AEDPA limitations period commences 90 days following the state court's writ denial.)

Under 28 U.S.C. § 2244(d)(1) petitioner had one year, or until July 19, 2003 to file his federal *habeas* petition.  Petitioner did not file his federal petition within that time period, nor was he able to toll the one-year period by the timely filing of a state application for post-conviction relief.  As shown above, petitioner did not file his  application for post-conviction relief until July 29, 2008 more than five years after the AEDPA limitations period had expired.  Clearly, if the AEDPA limitations period is calculated pursuant to § 2244(d)(1)(A), petitioner's claims are time-barred.

### 2. *Limitations – 28 U.S.C. §2244(d)(1)(B) – State Created Impediment*

Petitioner argues that the limitations period should be reckoned as provided in § 2244(d)(1)(B), "... the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action."  In support of this theory he argues "... the State of Louisiana's Department of Corrections [withheld] information from petitioner which created a state impediment and equitable tolling must apply to this case..." Doc. 1, p. 2.

Petitioner concedes that a Master Prison Record dated November 1, 2001, was provided to him on December 1, 2001.  Doc. 1, att. 2.  A cursory reading of the document reveals that it indicated both the Good Time Act under which petitioner was serving his sentence and a "PED"

well beyond that which he had himself calculated.  However, petitioner maintains that he was not "informed just what PED stands for" and thus implies that the Department's failure to define PED operated as an "impediment to filing" that was not removed until he received the July 18, 2008 correspondence from Ms. Rachal.   Doc. 1, att. 2, p. 13   Petitioner's claim to not understand "PED" to the contrary notwithstanding, it bears noting that the letter petitioner received from Ms. Rachal used the exact same abbreviation, "PED," Doc. 1, att. 3, p. 4, and petitioner does not indicate when or how he came to be cognizant of the actual meaning of the abbreviation.

In any event, the failure of the Department to define abbreviations on the Master Prison Record does not amount to a State created impediment to filing which is in violation of the Constitution or laws of the United States.  Clearly, the Department provided all of the information needed by petitioner to determine the date he was eligible for parole based upon the provisions of Act 1099.  Petitioner's failure to inquire about the meaning of the abbreviations does not amount to a state created impediment.  Petitioner cannot rely on his status as an unskilled layperson or as an inmate to excuse the delay in filing.  Ignorance of the law and the lack of legal assistance for a prisoner generally do not excuse late filing.  *United States v. Flores*, 981 F.2d 231, 236 (5th Cir.1993) (an inmate's *pro se* status, illiteracy, deafness, or lack of legal training do not amount to factors external to the inmate that excuse an abuse of the writ); *Saahir v. Collins*, 956 F.2d 115, 118-19 (5th Cir.1992) (neither a prisoner's *pro se* status nor ignorance of the law constitutes "cause" for failing to include legal claim in prior petition); *see also Scott v. Johnson,* 227 F.3d 260, 263 (5th Cir.2000) (confiscation of legal materials and an inadequate law library did not establish grounds for equitable tolling when the alleged impediments to filing a federal petition were removed six months before the limitations period ended), *cert. denied*, 532 U.S. 963 (2001);

8

*Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000) (alleged inadequacies in prison law library and lack of notice of AEDPA's requirements did not warrant equitable tolling), *cert. denied*, 531 U.S. 1035 (2000); *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999) (unfamiliarity with the legal process and lack of representation during the applicable filing period did not merit equitable tolling), cert. denied, 528 U.S. 1007 (1999).

In short, petitioner cannot rely upon the provisions of § 2244(d)(1)(B), and his period of limitations may not be reckoned from July 18, 2008, the date he received correspondence from Ms. Rachal.

### 3. *Limitations – 28 U.S.C. §2244(d)(1)(D) – Discovery of the Factual Predicate*

Petitioner's assertion that he is entitled to calculate the AEDPA limitations period from the date described in § 2244(d)(1)(D) is also without merit. That subsection permits the determination of the limitations period from "... the date on which the factual predicate of the claim ... could have been discovered through the exercise of due diligence." The factual predicate of petitioner's claim is the fact that his good time and parole eligibility are calculated under the provisions of Act 1099 and not as stated by the court at sentencing.

As shown above, petitioner was provided those facts on December 1, 2001 when he was given a copy of his Master Prison Record. That is the date that he must be held to have discovered the factual predicate of his claim. As provided by the statute, petitioner may have the limitations period calculated not from the date the "new" facts were discovered but rather the date upon which the "new" facts "could have been discovered through the exercise of due diligence." § 2244(d)(1)(D).

As shown above, petitioner, through receipt of the Master Prison Record on December 1,

2001, had at his disposal all the facts upon which his current claims are predicated.  He was remarkably incurious as to the meaning of the document; however, he could easily have discovered the meaning of the abbreviations in question had he exercised due diligence.

Since the date petitioner was presented with his Master Prison Record  pre-dates the date of finality of judgment as mentioned above, it does not behoove petitioner to have the AEDPA limitations period calculated using that date.

### 4. *Equitable Tolling*

The one-year limitation period is subject to equitable tolling but, only in "rare and exceptional cases." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998), *cert. denied*, 526 U.S. 1074 (1999); *see also Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.1999) (asserting that courts must "examine each case on its facts to determine whether it presents sufficiently 'rare and exceptional circumstances' to justify equitable tolling").

As noted earlier, neither unfamiliarity with the legal process (whether the unfamiliarity is due to illiteracy or any other reason), ignorance of the law, nor even lack of representation during the applicable filing period merits equitable tolling. *See Turner v. Johnson*, 177 F.3d 390, 291 (5th Cir.1999); *see also Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir.1991).

The circumstances alleged herein are not extraordinary enough to qualify for equitable tolling under § 2244(d)(1).  "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (1999), *cert. denied,* 529 U.S. 1057 (2000), (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996).  The pleadings do not suggest that petitioner was "actively misled" nor do they suggest that he was

prevented in any way from asserting his rights.

Equitable tolling should only be applied if the applicant diligently pursues § 2254 relief. *Scott v. Johnson*, 227 F.3d 260, 262 (5th Cir.2000); *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000*); Coleman v. Johnson*, 184 F.3d 398, 403 (1999), *cert. denied,* 529 U.S. 1057 (2000).

As of December 1, 2001, the date he claims to have received his Master Record from the Department, petitioner was, or should have been aware that his parole eligibility was calculated pursuant to Act 1099 and that his Parole Eligibility Date was determined to be September 1, 2031. Nevertheless, he waited until July 2008 before filing his ill-fated and untimely application for post-conviction relief in the Thirtieth Judicial District Court.  If his allegations are true, petitioner was remarkably incurious about the meaning of the abbreviations used on his Master Prison Record. A s noted above, petitioner was hardly diligent in determining the facts supporting his claim and therefore, he is ineligible for equitable tolling.

### Conclusion and Recommendation

**ACCORDINGLY, IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DISMISSED WITH PREJUDICE** because petitioner's claims are barred by the one-year limitation period codified at 28 U.S.C. § 2244(d) and he is not eligible for the benefits of either statutory or equitable tolling.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a COA, an appeal may not be taken to the court of appeals.  Within fourteen (14) days from service of this Report and Recommendation, the parties  may file a memorandum setting forth arguments on whether a COA should be issued.  *See* 28 U.S.C. §2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 27th day of June, 2011.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE